## GINGLES *vs* CALDWELL.

1. A bill of sale for a slave, a boy eight years of age, contained the following warranty: "I also do warrant Joe to be sound in mind and body, with the exception of his legs; and I do hereby bind myself, that, if his legs should injure him from being a serviceable boy at the age of fifteen years, to make him good." In an action for a breach of this warranty, *it was held:*

1. That the meaning of the warranty was, that if the injury to the boy's legs should *lessen his capacity for service at the age of fifteen,* the vendor should make good that injury; and not, that the boy should have, at that age, a *market value,* equal to that of a boy capable of doing ordinary service on a plantation;

2. That the measure of damages was, the difference between the boy's actual value at the age of fifteen, and what would have been his value if the injury to his legs had not lessened his capacity for performing the services usually rendered by slaves of that age;

3. That evidence as to the boy's situation, both before and after the specified

time, to-wit: when he arrived at the age of fifteen, but not so remote as to furnish no reasonable presumption as to his condition at that time, was admissible;

4. That proof that plaintiff had allowed the witness to have the boy's services gratuitously during the year before the trial, was inadmissible as evidence.

ERROR to the Circuit Court of Lowndes.

Tried before the Hon. E. PICKENS.

STONE & COOK, for plaintiff in error.

WATTS, JUDGE & JACKSON, contra.

CHILTON, J.—This was an action by Caldwell against Gingles for breach of the warranty contained in the following bill of sale: "January 12th, 1842, received of Samuel P. Caldwell three hundred and forty dollars, for one negro boy named Joe, aged eight years; the right and title to said boy I do warrant, and will forever defend, to said Caldwell, his heirs and assigns. I also do warrant Joe to be sound in mind and body, with the exception of his legs, and I do hereby bind myself, that, if Joe's legs should injure him from being a serviceable boy at the age of fifteen years, to make him good to said Caldwell. Given under my hand, the date above—(signed)—C. H. Gingles:" the declaration averring that at the age of fifteen the slave Joe, by reason of said unsoundness in his legs, was of no value, &c.

It appears by a bill of exceptions, that the slave's legs had been burned before the sale, and the proof conduced to show that they gradually grew worse, from the time of the sale down to the trial of the cause; that, at the age of fifteen, his legs had become more crooked, and that one thigh and hip seemed to have dwindled away, and that he could not walk without extraordinary exertion. It was, however, proved on the other hand, that, although not "a full hand," he could render valuable service. Several witnesses deposed that they did not regard the boy, at the age of fifteen, as of any value, by reason of the fact that his limbs would eventually become so dis ased as to render him a charge upon his owner.

On this testimony, the court charged the jury, that the intent and meaning of the warranty was, that the diseased con-

dition of the slave's legs at the age of fifteen, should not injure him as a serviceable boy; that the question to be decided by them was, whether the boy was serviceable at the age of fifteen. If, at that age, he was not serviceable, in consequence of the diseased condition of his legs, then the plaintiff was entitled to recover, and the measure of damage in that event was, the difference between the value of Joe as he was at fifteen, and the then market value of a boy of fifteen capable of doing ordinary plantation work; that the word "serviceable" in the bill of sale meant, that Joe should be as capable of doing ordinary plantation work at the age of fifteen, as if his legs had not been burned. The counsel for the defendant below insisted that this charge was erroneous, and prayed the court to instruct the jury, that the warranty did not require that Joe should be sound and healthy in his legs at the age of fifteen—also, that if Joe was capable and did perform valuable services at the age of fifteen, then there was no breach of the warranty as to the soundness of his legs, and that it was not necessary that the boy should be as capable of doing ordinary service as a sound, healthy boy.

The first question to be decided by us is, did the Circuit Court correctly construe the warranty contained in the bill of sale?

The slave was not sound at the time he was sold, by reason of the burn he had received, and if the warranty of soundness had been general, the vendor would have immediately been liable for its breach; but the vendor introduces an exception as to the slave's legs, and then proceeds to warrant specially as to the effect of the injury or unsoundness the boy then labored under, when he should arrive at the age of fifteen. Although not sound at the time of the sale, he might outgrow the injury, and this fact would, in all likelihood, be ascertained by the time he arrived at the age of fifteen. If, at that age, his legs should injure him from being a serviceable boy, that is, as we understand the parties meaning, if the injury should lessen his capability for service, Gingles agreed to make good that injury. This was a specific warranty, having reference alone to this injury at the particular age of fifteen. The warranty was not that Joe should possess at that age a market value equal to a boy capable of doing ordina-

ry service on a plantation. It has no reference to his market value, but to his capability for service merely. This may seem somewhat hypercritical; but when we consider that this boy, at the age designated, may have been capable of rendering ordinary service, and yet, by reason of being scarred and disfigured by the burn, or by the possibility of its subsequently injuring him, he might, and in all probability would have commanded a less sum in market than a boy who had never been injured, it is obvious the charge given becomes substantially erroneous and injurious to the warrantor.

The true measure of damage in this case is, the difference between the actual value of Joe, at the age of fifteen, and what would have been his value if the burn upon his legs had not lessened his capability for rendering the services ordinarily rendered by slaves of that age.

As respects the other points raised by the bill of exceptions, it is only necessary to say that, although the condition of the boy at the age of fifteen was the matter to be proved, till his situation both before and after that period, but not so remote as to furnish no reasonable presumption as to his *status* at that time, may be given in evidence. It is obvious that no general rule can be laid down upon this subject, as much will depend upon the nature of the fact to be proved, as to the probability of its continuance to a given future period, or of its existence at a past period, whether proof of its existence either before or after the point of time when it must be shown to exist, was or was not too remote.

The proof that the plaintiff below allowed the slave to serve the witness a year next before the trial gratuitously, was not competent. It did not tend to establish that the services were worthless. Indeed, the proof shows the contrary; but admitting that the plaintiff may have esteemed them valueless, it was not permissible for him thus to make his own estimate evidence.

Let the judgment be reversed, and the cause remanded.